IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00154-CMA-KLM

HUNTER MELNICK,

      Plaintiff,

v.

RICK RAEMISCH,
KAYLA JOHNSTON,
DEAN GONZALES,
SUSAN WHITE,
JEFF GEIST,
CHAMOIS FANELLIS-ARMENTROUT,
JOE WHITE,
JOE THISTLEWOOD,
NICOLE JIMENEZ,
OMER GARCIA,
SARA PHELPS,
BRANDON MATHEWS,
JANE DOE, unknown primary therapist,
SHEILA,
BRYCE GILMORE,
TAMMIS JAHN,
STATE OF COLORADO,
KARLENE KELSCH,
WATERS, and
AURORA MENTAL HEALTH CENTRE,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on three dismissal motions:

(1) Doc. # 63 ("the Parole Motion"), filed by Defendants Susan White, Chamois
Fanellis-Armentrout, Joe Thistlewood, Kayla (Johnston) Lancy, Joe White,
and Nichole Jimenez (collectively "the Parole Defendants");

1

(2) Doc. # 122 ("the Mathews Motion"), filed by Brandon Mathews;

(3) Doc. # 125 ("the AMH Motion"), filed by Aurora Mental Health Centre ("AMH").

For the following reasons, the Parole Motion and the Mathews Motion are granted in part and denied in part; the AMH Motion is denied as moot.

## I. Background

This is a 42 U.S.C. § 1983 case attacking the constitutionality of parole conditions. Plaintiff, Hunter Melnick, was convicted of sexual assault in Douglas County, Colorado. (*See* Doc. # 63-1).[1] He was sentenced to a term of imprisonment followed by a mandatory period of parole. (Doc. # 63-1). Upon being released on parole in 2017, he was placed under intensive supervision pursuant to the Colorado Sex Offender Lifetime Supervision Act ("SOLSA"), C.R.S. § 18-1.3-1005. Melnick ultimately violated his parole and taken back into the custody of the Colorado Department of Corrections ("CDOC"), where he currently remains.[2]

Melnick now claims that SOLSA is unconstitutional. (Doc. # 18 ("Complaint"), p. 6). He is suing various individuals and entities who were involved administering his parole, including numerous state employees ("the Parole defendants"), the Aurora Mental Health Center ("AMH"),[3] and others, alleging that they violated his constitutional

---

[1] The Court can take judicial notice of this document without converting the Rule 12(b)(6) motions into summary judgment motions. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

[2] *See* CDOC Offender Search Results for Offender Hunter Melnick, #148112, http://www.doc.state.co.us/oss/.

[3] AMH is apparently where Melnick received sex-offender treatment and behavioral therapy while he was on parole.

rights by enforcing SOLSA and otherwise limiting his freedom while he was on parole. (Doc. # 18). This is just one of many lawsuits Melnick has filed challenging various aspects of his conviction, sentence, and conditions of confinement. *See Melnick v. Lawrence et al.*, Civil Action No. 19-cv-01550-CMA-KLM; *Melnick v. Gamblin et al.*, Civil Action No. 20-cv-02284-CMA-KLM; *Melnick v. Polis*, Civil Action No. 21-cv-00908-CMA; *Melnick v. Camper*, Civil Action No. 18-cv-02885-CMA-KLM.

Defendants[4] now seek dismissal of Melnick's Complaint. They argue that (1) Melnick's claims are barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) 42 U.S.C. § 1983 is not the proper avenue for challenging parole conditions; (3) Defendants are entitled to immunity from suit; and (4) Melnick's Complaint fails to state a claim upon which relief can be granted.

## II. Standard of Review

A motion to dismiss tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a dismissal motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ]

---

[4] Because there are three separate dismissal motions before the Court, the Court will defer to all arguments in favor of dismissal as "Defendants' arguments" for the sake of simplicity, unless the identity of the defendant making the argument is relevant to the Court's determination of the issue.

3

[has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

## III. Analysis

As best the Court can tell,[5] Melnick is asserting twelve causes of action against twenty different defendants. Melnick's remaining[6] claims assert that Defendants:

1)  violated Plaintiff's First Amendment right to access the courts by "banning computer access to courts and court related legal research" (Claim 1);

2)  violated Plaintiff's First Amendment right to freedom of speech and assembly by forbidding him "from going to a library, parks, malls, capitol building, or going to other public places" (Claim 2);

3)  violated Plaintiff's First Amendment right to practice his Jewish religion (Claim 4);

4)  violated Plaintiff's First Amendment right to association by prohibiting him from having contact with certain family members (Claim 5);

5)  violated Plaintiff's due process rights when limiting Plaintiff's treatment options while on parole (Claim 6);

6)  violated the non-delegable duty doctrine by contracting with third-party treatment providers who enforce unconstitutional rules (Claim 7);

7) conspired against Plaintiff to violate his parole and revoke it (Claim 9);

---

[5] Plaintiff's pro-se complaint is lengthy, dense, and somewhat difficult to understand. It is also not entirely clear which claims are asserted against which defendants. Because Plaintiff is proceeding pro se, the Court will construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). However, the Court will not serve as Plaintiff's advocate, and it will not "supply additional factual allegations to round out [the] plaintiff's complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997). A pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[6] Claims 3, 8, part of Claim 10, and Claim 12 were dismissed on the initial review. (Docs. ## 24, 26).

4

8) prohibited Plaintiff from accessing the internet in violation of the Fourteenth Amendment (the remaining portion of Claim 10 that was not previously dismissed)

9) violated Plaintiff's rights to procedural and substantive due process regarding the termination of sex offender treatment based on his development of an escort service website (Claim 11).

Melnick also alleges:

10) 2017 Colo. HB 1326 violates the ex post facto clause because it increased the potential penalty of Plaintiff's parole violation from a maximum of 90 days to the remainder of his life (Claim 13);

11) 2017 Colo. HB 1326 violates the equal protection clause because Plaintiff was not treated the same as "similarly situated individuals who have non-violent status with low-medium risk" and Plaintiff is not sentenced to a crime of violence (Claim 14); and

12) Colo. Rev. Stat. § 18.1.3-1005 is unconstitutional facially and/or as applied to Plaintiff (Claim 15).

As relief, Melnick requests compensatory and punitive damages. (Doc. # 18, p. 23).

Melnick also seeks declaratory and injunctive relief, including a declaration that C.R.S. § 18-1.3-1005 and 2017 Colo. HB 1326 are unconstitutional as applied to him; that he be subject to "standard parole restrictions" only; and that any future restrictions or revocation proceedings be limited. (Doc. # 18, pp. 22-23).

## A.      Arguments Relevant to Dismissal of All Claims

The Court will first address dismissal arguments that apply to some or all of Melnick's claims, before addressing the arguments that attack the merits of each individual claim.

### 1.    Whether Plaintiff's Claims are Barred Under *Heck v. Humphrey*

Defendants first argue that Melnick's claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a prisoner cannot challenge the validity of a criminal conviction or sentence through a Section 1983 action. 512 U.S. at 487. Rather, such challenges must be brought in the form of a direct appeal or a petition for habeas corpus. *Id*. at 486. The *Heck* Court reasoned that Section 1983 is a civil tort statute, not a collateral attack statute. *Id*. at 486. It is intended to allow prisoners to bring civil suits for civil remedies, not to provide another opportunity to challenge the validity of a conviction or sentence. *Id*. at 486. Therefore, a Section 1983 claim that challenges the validity of a conviction or sentence is subject to dismissal. *See id*. The *Heck* rule also bars Section 1983 actions that "call into question the fact or duration of parole or probation." *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996).

Defendants contend that Melnick's lawsuit is barred by *Heck* because it challenges the validity of his parole. Therefore, they argue, this Claim should have been brought as a habeas proceeding, not as a Section 1983 action. Melnick counters that he is not challenging the validity of his parole, but rather challenging parole conditions and procedures. (Doc. # 137, p. 1).[7] Therefore, he argues, *Heck* does not apply, and his claims can proceed as filed. With respect to Claims 11 and 13, the Court agrees with Defendants; with respect to the remaining claims, the Court agrees with Melnick.

---

[7] Melnick also argues that this issue was already decided by Judge Babcock in his Order (Doc. # 23) allowing the case to proceed. This argument is incorrect. Judge Babcock determined only that "[a]t this early stage of the litigation under initial review, it is not clear that Heck would bar the claims." (Doc. # 23, p. 3). This conclusion is not dispositive of the issue at hand.

"[I]t is a matter of some dispute whether challenges to parole conditions may be brought under 42 U.S.C. § 1983, or instead must be litigated through the habeas route." *Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1284 (D. Colo. 2016). The basic analytical problem is that, in the parole context, it is difficult to distinguish the conditions of confinement (normally challenged through § 1983) from the lawfulness of the confinement (normally challenged through a habeas petition):

> For prisoners [as opposed to parolees], the difference between a civil rights action and a collateral attack is easy to describe. Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983. Attacks on the fact or duration of the confinement come under § 2254. For parolees, the question is more metaphysical, because the "conditions" of parole *are* the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or ... obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom.

*Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir.2003) (emphasis in original; citations omitted).

Courts are split over whether challenge to parole conditions is, in effect, a challenge to the legality of the sentence itself. *Compare Williams*, 336 F.3d at 579, *with Thornton v. Brown*, 757 F.3d 834 (9th Cir.2013). The Tenth Circuit has not yet taken a position on this debate. *See Banks v. United States*, 431 Fed.Appx. 755, 757 (10th Cir.2011) (stating, in the context of *Bivens* – the federal-officer equivalent to § 1983 – that it is "an open question in this circuit whether a challenge to parole conditions is more like a challenge to the fact or duration of one's confinement (and so cognizable in habeas) or more like a challenge to one's conditions of confinement (and so cognizable

only in a Bivens action)"). However, the Colorado Court of Appeals has determined that "[a]lthough the DOC classification may have parole-related effects, classification or registration as a sex offender, . . . is not an element of a defendant's sentence." *People v. McMurrey*, 39 P.3d 1221, 1225 (Colo. App. 2001) (citations omitted).

Mindful of both the above authority and the liberal pleading standards for pro-se plaintiffs, the Court finds that, with the exception of Claims 11 and 13, Melnick's Complaint does not challenge the validity of Melnick's sentence, and therefore does not violate *Heck*. Claims 1, 2, 4, 5, 9, and 10 allege that Defendants have violated Melnick's constitutional rights by, among other things, limiting his freedom of speech, limiting his access to the courts, limiting his freedom of association, and inflicting cruel and unusual punishment. (Doc. # 18). Claim 6 asserts a due process violation in connection with treatment options Plaintiff was given (Doc. # 18, pp. 9-10); Claim 9 seeks damages and other relief for an alleged conspiracy under § 1983 (Doc. # 18, p. 13); and Claim 15 challenges the constitutionality of the statute governing the parole-intensive supervision program, C.R.S. § 18-1.3-1005. (Doc. # 18, pp. 24-25). Although many of these claims challenge conditions of parole that are mandated by SOLSA, they do not clearly challenge the validity of the parole itself, and if successful, they would not necessarily invalidate either the fact or duration of his parole sentence. Therefore, the Court finds that these claims do not violate *Heck*, and they are not subject to dismissal on that basis. *See Conkleton*, 603 F. App'x at 716 (finding that a sex offender's retaliation claim was not barred by *Heck* because it was based not on the denial of parole itself, but rather on the officials' allegedly retaliatory actions); *Fritz*, 223 F. Supp. 2d at 1203

(finding that *Heck* did not bar constitutional challenges to the sex offender law because, for example, "[n]othing about Plaintiff's equal protection claim necessarily implies underlying invalidity of his conviction or sentence. . . . A ruling in Plaintiff's favor would necessarily prevent application of the amended sex-offender registration act to him. . . . It would also affect a condition of his probation. . . . This does not, however, implicate the term of Plaintiff's probation. . . .Nor does it imply Plaintiff's conviction or sentence is unsound"); *Brack v. Ortiz*, No. 05-cv-02658-WYD-CBS, 2007 WL 867992, at *10 (D. Colo. Mar. 20, 2007) (finding Plaintiff's claim that, upon parole, he had been unconstitutionally classified as a sex offender in the community by the Colorado State Parole Board without due process and in violation of his equal protection right did not implicate *Heck* because it was a "collateral attack" on his conviction"); *cf. Todd v. United States Fed. Corp.*, 780 F. App'x 642, 645 (10th Cir. 2019) (finding that claim that plaintiff's family had been harassed because he was listed on Colorado's sex offender registry was barred by *Heck* because the plaintiff "specifically argue[d] that he was 'falsely accused' of the crime or crimes that resulted in his registration requirement. . . . Thus, any claim based on alleged vigilantism is precisely the kind of claim that is barred under *Heck*").

Claims 11 and 13, however, do implicate *Heck*. These claims challenge the revocation of Melnick's parole: Claim 11 alleges that Melnick's due process rights were violated when he was terminated from sex-offender treatment, which led to parole revocation; and Claim 13 alleges that the statute under which his parole was revoked was unconstitutional. (Doc. # 18, pp. 15-19). Both of these claims, if successful, would

invalidate the state parole board's decision to revoke Melnick's parole. A claim that would necessarily invalidate the state parole board's decision to revoke parole is barred by *Heck. See Conkleton v. Zavaras*, 603 F. Appx 713, 716 (10th Cir. 2015); *Jones v. Lane*, No. 06-cv-116-EWN-MEH, 2006 WL 4451913, at *5 (D. Colo. Oct. 4, 2006). *See cf. Hudson v. Mason*, 445 F. App'x 139, 140-41 (10th Cir .2011) (finding that even when registered sex offender was "not complaining about his parole revocation, per se, but sought redress (in the form of damages) for the liberty he claims to have lost due to his arrest and the revocation of his parole," the claim was barred by *Heck*).[8] Therefore, Claims 11 and 13 are subject to dismissal without prejudice. *See Graham v. Waters*, 805 F. App'x 572, 579 (10th Cir. 2020) ("a dismissal under *Heck* is without prejudice.").

### 2.      Claims for Declaratory and Injunctive Relief

Defendants next contend that Melnick's claims for injunctive and declaratory relief are moot. (Doc. # 122, pp. 8-9). Specifically, Defendants argue that because Melnick's parole has already been revoked, he is no longer subject to the parole conditions he is challenging. (Doc. # 122, p. 8). Therefore, Defendants argue, Melnick's claims for injunctive and declaratory relief are moot and must be dismissed. (Doc. # 122, pp. 8-9). The Court agrees.

"Article III limits a federal court's jurisdiction to 'cases and controversies.'" *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008). "It is a basic principle of Article III that a justiciable case or controversy must remain extant at

---

[8] Claim 14 also challenges 2017 Colo. HB 1226 through the assertion of an equal protection claim, but the Court finds it is not barred by *Heck*. Plaintiff avers that he is not challenging his parole violation "since it has already been fully served," but asserts that he "wants to be similarly treated in the future to other individuals." (Doc. #18, p. 19).

all stages of review, not merely at the time the complaint is filed." *Deberry v. Davis*, 460 F. App'x 796, 799 (10th Cir. 2012) (internal quotations and citation omitted). A claim may become moot at any point in the controversy and deprive the Court of authority to decide questions which had previously been at issue. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990). "[I]t is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." *McLendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (citation omitted).

Melnick was on parole when he filed his Third Amended Complaint (Doc. # 18) challenging the constitutionality of various parole conditions. However, Melnick's parole has since been revoked, and as a result, he is no longer subject to those parole conditions. Accordingly, his claims for injunctive and declaratory relief are moot. *See Edmond v. Raemisch*, 593 F. App'x 761, 765 (10th Cir. 2014) (affirming district court's finding that claim for declaratory and injunctive relief regarding parole conditions was moot because the "parole agreement was no longer in effect" once the plaintiff was incarcerated).

Melnick argues, however, that this case fit the mootness exception for disputes "capable of repetition yet evading review." (Doc. # 75, p. 3; Doc. # 94, p. 3). This argument fails. Melnick provides no authority supporting this argument in the context of

this case, and a similar argument was rejected by the Tenth Circuit in *Edmond*. 593 F. App'x at 765. The "capable of repetition" exception "applies where (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir.2010). Neither of these circumstances are present here. As the Tenth Circuit acknowledged in *Edmond*, 593 F. App'x at 765, even if a prisoner's "past parole periods have been short and the same conditions keep being imposed on him each time he is re-released . . . that does not mean that the conditions will evade review, as [the prisoner] is free to initiate a new lawsuit challenging the current conditions of parole." *Edmond*, 593 F. App'x at 765. The same reasoning applies in this case. Therefore, the Court finds that Plaintiff's claims do not meet the "capable of repetition, yet evading review" exception to mootness, and his claims are subject to dismissal without prejudice.[9] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1215 (10th Cir. 2015) (a dismissal for lack of jurisdiction must be without prejudice).

Plaintiff's claims for monetary damages, however, are not moot. *See Green*, 108 F.3d at 1300 (claims for injunctive and declaratory relief as to prison officials were mooted by transfer of inmate since they would have no effect on the defendants' behavior towards the plaintiff, but that the claims for damages remained "viable because a judgment for damages in his factor would alter the defendant's behavior by forcing

---

[9] Moreover, there is no right to discretionary parole, so Melnick is merely speculating when he argues that he will likely be re-paroled in the future and and subject to the same parole conditions he challenges in this case. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 1979); *Mahn v. Gunter*, 978 F.2d 599, 602 (10th Cir. 1992).

them to pay an amount of money they otherwise would not have paid."). The Court will address those claims below.

### 3.    Official Capacity Claims

Defendants next argue that Melnick's "official capacity" claims – claims asserted against the individual defendants in their official, rather than personal, capacities – are subject to dismissal. The Court agrees.

"[S]uits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Such suits are equivalent to suits against a public entity and are barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Tenth Circuit has therefore held that "§ 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer*, 502 U.S. at 27, 30). Accordingly, to the extent Plaintiff has sued any state official, in his or her official capacity, for monetary damages, the claims are barred by the Eleventh Amendment.[10]

### 4.    Absolute Immunity as to Defendant Mathews

Finally, Defendant Mathews argues that, as a member of the Colorado Parole Board, he is entitled to absolute immunity on the claims for damages asserted against him. *Id.* at 7. The Court agrees.

---

[10] These state officials include Raemisch, the Parole Defendants, and Mathews. The Court does not have adequate information at this stage to conclude that any of the other Defendants are employed by the state.

Members of a parole board have absolute immunity 'from damages liability for actions taken in the performance of the [b]oard's official duties regarding the granting or denying of parole.'" *Russ v. Uppah,* 972 F.2d 300, 303 (10th Cir.1992) (citation omitted); *see also Graham v. Waters*, 805 F. App'x 572, 578 (10th Cir. 2020).

Here, Plaintiff acknowledged in both his initial and amended complaints (Docs. ## 1, 7) that Mathews is a member of the Colorado parole board. Moreover, Mathews is sued in Claim 14 for revoking Plaintiff's parole under 2017 Colo. HB 1326 (Doc. # 18, p. 19). The Court finds no claims in the Complaint that implicate Mathews in any manner other than as a parole board member. The Court takes judicial notice that Mathews is a Colorado Parole Board member as this is a matter of public record. https://paroleboard.colorado.gov/meet-board-members (last visited September 8, 2021). *See Tal*, 453 F.3d at 1264 n.24; *see also Hyland-Riggs v. Michaud*, No. 10-cv-00714-MSK-BNB, 2011 WL 572357, at *2 (D. Colo. Feb. 15, 2011) (taking judicial notice of defendant's status as member of Colorado Parole Board based on plaintiff's identification of defendant as such in caption, certificate of service, and allegations). Therefore, the Court finds that Mathews is entitled to absolute immunity from the remaining claims seeking monetary damages. *Russ*, 972 F.2d at 303.

### 6.    Conclusions

For the foregoing reasons, Claims 11 and 13 are dismissed without prejudice under *Heck*; Melnick's claims for declaratory and injunctive relief are dismissed without prejudice because they are moot; Melnick's official-capacity claims against the

Raemisch, the Parole Defendants, and Mathews are dismissed with prejudice; and Defendant Mathews is dismissed from the case.

The Court will now address Defendants' arguments for dismissal of the remaining claims under F.R.C.P. 12(b)(6).

**B.      Whether Plaintiff's Remaining Claims are Subject to Dismissal**

Defendants next argue that Melnick's Complaint fails to state a claim upon which relief can be granted, and that it is therefore subject to dismissal under F.R.C.P. 12(b)(6).

### 1.      Legal Standard

To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Khalik*, 671 F.3d at 1192 (citation and internal quotation marks omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Id*.

### 2. Analysis

#### a. Claim 1

Defendants first argue that Claim 1 in Melnick's Complaint is subject to dismissal for failure to state a claim. Claim 1 alleges that Defendants violated Melnick's First Amendment rights by limiting his access to the courts. Specifically, Melnick alleges that Defendants limited the places he could "physically go including courts, attorneys, libraries" and prevented him from using a computer for legal research. (Doc. # 18, p. 7). Defendants argue that Melnick has failed to allege any injury in connection with these alleged restrictions.[11] The Court agrees with Defendants.

To succeed on a First Amendment claim for denial of court access, it is not enough for a plaintiff to establish that he was denied access to the library or to legal materials; "rather, he must establish that such inadequacies . . . caused him actual harm." *Lewis*, 518 U.S. at 351. Thus, a plaintiff needs to plausibly allege that the restrictions imposed by the defendants actually "hindered his efforts to pursue a claim." *Id.* (noting, for example, that a plaintiff could allege that "he was so stymied" by the

---

[11] The assertion in Claim 1 that Plaintiff is challenging the constitutionality of C.R.S. §18-1.3-1005 as applied to him, *id.* at 6, is addressed in connection with Claim 15, *infra.*

restrictions imposed that he was unable to even file a complaint). Melnick has not met this burden.

Melnick's Complaint does not contain any clear explanation as to how Defendants' actions hindered his efforts to pursue a claim. Indeed, to the contrary: Melnick's Complaint demonstrates that was able to conduct legal research, access relevant cases and other authorities, and file a lawsuit (in fact, many lawsuits) while under the restrictions he now challenges. While Melnick may have found these restrictions to be inconvenient, his Complaint demonstrates that such inconvenience did not rise to a level of an unconstitutional denial of access to the courts. *See Mayes v. Province*, 353 F. App'x 100, 105 (10th Cir. 2009) (holding inmate's numerous filings established that he was not being deprived of access to the courts). Therefore, Claim 1 fails on its face and must be dismissed without prejudice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("ordinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint.") (citations omitted).

### b. Claims 2 and 10

Defendants next challenge Claim 2 and the remaining portion of Claim 10 that has not already been dismissed. These claims allege that Defendants violated Plaintiff's right to freedom of speech and assembly by prohibiting Melnick from "contacting media" and the government[,]" using a computer, and "go[ing] to parks or places where people gather to exchange ideas, or to go online and exchange ideas and find out about

anything happening in the world." (Doc. # 18, pp. 7, 13-15). Defendants argue that these claims fail because "the complaint does not establish that Melnick was actually harmed by [Defendants'] purported misconduct or that he requested but was denied permission to engage in certain free speech . . . activities." (Doc. # 63, p. 12). The Court disagrees.

"A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen[.]" *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). The internet is one such "place." *Id.* at 1738. For parolees, that access is not always unfettered. "Parolees do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special parole restrictions. . . . These restrictions are designed to ensure rehabilitation and protect the public." *United States v. Lewis*, 71 F.3d 358, 361 (1995) (quotations and citations omitted). The Tenth Circuit, like other courts, has recognized that parole conditions may infringe on otherwise constitutionally protected liberties if the restrictions are reasonably related to the purposes of parole.  *See United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995); *United States v. Payne*,181 F.3d 781 (6th Cir. 1999).

Taking Plaintiff's allegations as true – as the Court must at this stage – the Court finds that Claims 2 and 10 plausibly allege a constitutional violation. Melnick's Complaint, liberally construed, alleges a total or near-total ban on his ability to access the internet for any purpose. While the Parole Board certainly has an interest in imposing restrictions, even severe restrictions, on Plaintiff's activities to protect the

public and children given that he is a sex offender, *see* C.R.S. §18-1.3-1005(2), the broad restrictions Melnick alleges, if true, could violate the First Amendment as elucidated in *Packingham.* Therefore, Plaintiff has plausibly alleged a First Amendment violation in Claims 2 and 10, and those claims survive dismissal.

Defendants argue, however, that *Packingham* is distinguishable because Melnick's parole conditions are a part of his sentence, and they are therefore valid restrictions on his constitutional rights. *Id.* at 15. The Court rejects this argument. As discussed above, the Colorado Court of Appeals has determined that "[a]lthough the DOC classification may have parole-related effects, classification or registration as a sex offender, . . . is not an element of a defendant's sentence." *Id.* at 2 (citing *McMurrey*, 39 P.3d at 1225). Further, the case Defendants cite in support of this argument, *United States v. Perrin*, 926 F.3d 1044 (8th Cir. 2019), is distinguishable. In *Perrin*, the condition at issue was not "'a complete ban on the internet because it permitted the defendant 'to access the internet as long as he obtain[ed] permission from the probation office.'" *Id.* at 1050 (citation omitted). Here, by contrast, Melnick claims that he was totally barred from accessing the internet for any purpose, because he was told not to bother asking to access the internet or visit parks: "don't bother those places won't ever get approved." (Doc. # 18, p. 8). Thus, Melnick has plausibly alleged a constitutional violation, and these claims survive dismissal.

The Court does find, however, that Claims 2 and 10 must be dismissed as to some of the Defendants because Melnick has not shown their personal participation in any constitutional violation. As best the Court can tell from Melnick's allegations, Claim

2 implicates Defendants Gilmore, Doe, Sheila, Jahn, and Johnston; and Claim 10 is asserted against Defendants Susan White, Johnston, and Garcia. (Doc. # 18, pp. 13-15; Doc. # 75, p. 6). The Court finds no affirmative link between the constitutional violations complained of and the other named Defendants. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156.(10th Cir. 2001) (requiring such an affirmative link); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (holding that when the plaintiff sues a number of defendants collectively, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her. . . ."). Therefore, Claim 2 may proceed against Defendants Gilmore, Doe, Sheila, Jahn, and Johnston, but it is dismissed with respect to all other Defendants. Claim 10 may proceed with respect to Defendants White, Johnston, and Garcie, but it is dismissed with respect to all other Defendants.[12]

      c.    **Claim 4**

Defendants next seek dismissal of Claim 4, alleging a violation of the First Amendment right to religious freedom. (Doc. # 63, pp. 9-12*; Doc. #18, p. 8). Plaintiff asserts that he was prohibited by Gilmore, Doe, AMH, Sheila, Jahn, Marlowe, Gursky, Johnston, Gonzales, and "Raemisch/Whites [sic] policies[,]" under threat of being sent to prison for life, "from going to his family's Jewish ritual dinners and from going to Temple." (Doc. # 19, p. 8). Plaintiff also avers that he was prohibited from doing any

---

[12] Melnick also alleges that several non-defendants participated in the alleged constitutional violations. Because those individuals are not name as defendants in this case, the Court need not address the allegations against them.

religious research at a library or online, going to religious stores, congregating with other faiths, or consuming alcohol on Purim and other Jewish holidays. *Id.* Defendants argue that this claim is based on "threadbare" allegations that "fall far short of stating plausible claims for relief," and is therefore subject to dismissal. (Doc. # 63, p. 11). The Court disagrees.

Accepting Melnick's allegations as true, Melnick has averred that he was prohibited from going to Temple and doing other activities related to his religion, such as going to religious stores or doing religious-based research. Construing the allegations in the light most favorable to Melnick, and without the benefit of a substantive response from Defendants on this issue, it would appear that a primary effect of the parole conditions may be to inhibit Melnick's free exercise of his religious beliefs. Further, a complete prohibition from allowing Melnick to go to Temple to practice his Jewish faith, as Melnick alleges, runs afoul of the Establishment Clause's requirement that "a state actor cannot 'force nor influence a person . . . to remain away from church against his will." *Janny*, 2021 WL 3439009, at *8. Accordingly, Claim 4 will be allowed to proceed against Gilmore, Doe, Sheila, Jahn, Johnston, and Gonzales. However, to the extent that Plaintiff may be attempting to sue Defendants Raemisch or the Whites, Plaintiff has not described how Raemisch or the Whites are liable for his alleged injury. *See Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010). Accordingly, Claim 4 is dismissed as to Raemisch and Joe and Susan White.

### d.    Claim 5

Defendants next seek dismissal of Claim 5. Claim 5 is a First Amendment familial association claim, but it incorporates averments made in Claims 2, 4, and 10 about Plaintiff being restricted from doing religious research and communication about his faith and being prohibited from going on social media, to parks, the capital building and other "classic avenues where freedom of speech" and ideas and information occur. (Doc. # 18, pp. 8-9). As those allegations were previously addressed above, the Court focuses on the familial association claim.

Melnick avers that he was prohibited from having any contact with minors, including members of his own family, or going to any family or friend's residences unless it was preapproved by Johnston, which allegedly did not happen because Melnick was told "those places won't ever get approved." (Doc. # 18, p. 8). According to Melnick, Johnston restricted Melnick from visiting family at their residences and Melnick's family from coming over to Melnick's residence. *Id.* at 8-9. However, Melnick also avers that family members "were finally approved" to come over to his residence. Melnick further asserts that he "was directed by DOC via the parole directives and verbal order by Johnston, Garcia, Jiminez . . ., with the signed (ATP) treatment contracts that he could not associate with or contact any minors[,]" including his little sister who was 17 years old and his baby nephew. *Id.* at 9. This "disrupted and restricted communications with his family." *Id.*

To state a claim for the deprivation of the right of familial association, a plaintiff must allege (1) that Defendants intended to deprive him of a protected relationship with

his family, and (2) balancing this interest in the protected relationship against the state's interests in protecting health and safety, Defendants either unduly burdened the plaintiff's protected relationship or effected an "unwarranted intrusion" into that relationship. *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014). This claim is actually grounded in the Fourteenth Amendment, not the First Amendment. *Id.*

The Court first finds as to Melnick's alleged inability to associate with adult family members and Melnick's common law wife who are over 18 that Plaintiff has not stated a plausible claim. While Melnick states that Johnston "did everything she could to discourage the Plaintiff from establishing a support system with his family and friends" (Doc. #18, p. 9), Melnick acknowledges that he was "finally" allowed to have such family members over to his home. *Id.* Thus, Melnick's own allegations demonstrate that he was allowed to have contact with his family members, and Melnick describes the process for approval of contact with these people. *Id.* at 8. Moreover, while Melnick claims that it was threatened that he could not live with his common law wife, *id.*, Melnick does not allege that this threat ever materialized. When Melnick's protected relationship with his adult family members and wife is balanced against the state's interests in protecting the public and rehabilitation, the Court finds that Melnick has not plausibly pled that Defendants either unduly burdened Melnick's protected relationship or effected an "unwarranted intrusion" into that relationship. *Thomas*, 765 F.3d at 1196. Accordingly, this portion of Claim 5 is dismissed.

Claim 5 is also dismissed to the extent it asserts a familial association claim related to other persons in Melnick's family who are under the age of 18, including his

23

sister and his nephew. (Doc. # 18, p. 9). Outside of the context of parent-child interactions, the right to familial association is "less well-defined." *United States v. White*, 782 F.3d 1118, 1139 (10th Cir. 2015). In *White*, the Tenth Circuit addressed a challenge to a sex offender's probation conditions that denied him contact with minor grandchildren and nieces without prior written permission. *Id.* The *White* court made clear that "[g]eneral restrictions on children do not involve a greater deprivation of liberty than reasonably necessary in an ordinary case where a defendant has committed a sex offense against children or other vulnerable victim." *Id.* at 1138. Further, the court noted that "a special condition of supervised release may only infringe on the parental right to familial association if there are compelling circumstances," but that other claims as to familial association are "entitled to less constitutional protection." *Id.* at 1140. The Tenth Circuit remanded the case and stated that if the defendant wished to pursue the argument that he should not be precluded from a relationship with his grandchildren and nieces as a condition of supervised release, it would be his burden to demonstrate the nature of his relationship with them. *Id.* The district court was instructed that it was then free to "consider the degree to which that relationship resembles a parental one and impose conditions of release accordingly." *Id.*

Here, Melnick has not alleged any type of parental or custodial arrangement with his nephew or any other minors in his family, and does not describe his relationship with them. (Doc. # 18, p. 9). The conditions of parole related to Melnick's association with them is thus entitled to less protection. Further, a sex offenders' contact with children is generally not authorized absent a close familial relationship, *White*, 782 F.3d at 1138-

40, and Plaintiff has not alleged any facts from which the Court can infer such a close familial relationship with the minors. Accordingly, the Court finds that Claim 5 must also be dismissed as to the alleged violation of familial association with minors in Melnick's family. The prohibition on contact with minors furthers the legitimate interests of the state in rehabilitation and protecting the public from sex offenders, particularly, vulnerable minors who are more at risk. *See Wirsching v. Colorado*, 360 F. 3d 1191, 1200- (10th Cir. 2004). Melnick has not plausibly pled allegations from which the Court can infer that such restrictions do not serve those interests. Accordingly, the Court finds that Melnick's familial interest in associating with his nephew and other minors[13] in his family is outweighed by the state's interest in protecting health and safety.

Based on the foregoing, Claim 5 is dismissed with prejudice as to the alleged violation of the right of familial association with Plaintiff's adult family members, as it would appear that any amendment as to such claim would be futile. *See Wilson v. Reid,* 781 F. App'x 789, 793 (10th Cir.2019) (holding that dismissal with prejudice of a pro se complaint is appropriate where amendment would be futile). However, as to the portion of the claim alleging a violation of the right of familial association with minors in Plaintiff's family, the claim is dismissed without prejudice. *See Gee*, 627 F.3d at 1186.

---

[13] Melnick also alleges that he was not allowed to contact his sister, who was "17 years old as of 2017," because she was a minor. (Doc. # 18, p. 9). However, by the time this lawsuit was filed in 2019, Melnick's sister was no longer a minor, so any familial association claim related to his sister was moot when filed.

**2.      Other Claims**

**a.      Fourteenth Amendment**

In Claim 6, Melnick claims his due process rights under C.R.S. § 16-11.7-105 were violated because he was denied the right to choose between two treatment providers for his sex offender treatment. Defendants argue that this claim must be dismissed because Plaintiff does not have any procedural due process right to the treatment options he asserts. (Doc. # 63, pp. 17-20). The Court disagrees.

To establish a due process violation, Melnick must show that he has been deprived of a protected liberty interest. *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005). In this case, Melnick alleges C.R.S. § 16-11.7-105 created a protected liberty interest in an offender's right to choose a provider for his sex-offender treatment. (Doc. # 18, p. 10). This argument fails.

Section 16-11.7-105(2) addresses sex offender treatment, and provides in pertinent part:

> [T]he supervising agency of each adult sex offender and juvenile who has committed a sexual offense shall provide the offender with a choice of two appropriate treatment provider agencies staffed by approved providers <u>unless</u> the supervising agency documents in the file that, based upon the nature of the program offered, the needs of the offender, or the proximity of the appropriate treatment provider agency, fewer than two such agencies can meet the specific needs of the offender, ensure the safety of the public, and provide the supervising agency with reasonable access to the treatment provider agency and the offender during the course of treatment.

*Id.* (Emphasis added). This statute does not create a liberty interest in Melnick's unfettered choice of a *particular* treatment provider, or even his choice between *two* treatment providers. Rather, the provision gives the "supervising agency" discretion to

26

determine which treatment providers are appropriate, and, as the circumstances permit, to allow an offender to choose from two acceptable options. However, the statute also gives the agency discretion to dictate to the offender which treatment programs it deems appropriate. When a statute vests discretion in a state agency to make decisions about a prisoner's parole, no protected liberty interest arises. *Boutwell,* 399 F.3d at 1213. Therefore, Melnick has failed to plead a plausible due process claim. Accordingly, Claim 6 is dismissed with prejudice. *Wilson,* 781 F. App'x at 793.

### b.    Non-Delegable Duty Claim

Defendants next argue that Claim 7 fails to state a plausible claim for relief. The Court agrees.

Claim 7 alleges that Defendants violated the non-delegable duty doctrine by delegating supervision over aspects of Melnick's parole to non-party treatment providers. (Doc. # 18, p. 1). This way, Melnick claims, "DOC keeps hands clean" while the treatment providers, as private entities, had free rein to violate Plaintiff's constitutional rights. *Id.* This claim fails on its face.

"[T]he State cannot by choosing to delegate its constitutional duties to the professional judgment of others, thereby avoid all liability flowing from the attempted fulfilment of those duties under Section 1983." *Estate of Walker*, 343 F. Supp. 3d at 1215-16. In the case at hand, however, Melnick has failed to assert plausible allegations to support his non-delegable duty claim. Melnick fails to explain what non-delegable duties were delegated, to whom they were delegated, by whom they were delegated, or how his constitutional rights were violated as a result of the delegation. *See Robbins*,

519 F.3d at 1250 (holding that the plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ."). He simply offers bare, unsupported conclusions. (*See, e.g.* Doc. # 18, p. 11 ("DOC would contract with treatment providers . . . and then have the treatment providers . . . violate Plaintiff's constitutional rights.")). These conclusory assertions do not satisfy the plausibility pleading standard. Therefore, Claim 7 is dismissed without prejudice. *See Gee*, 627 F.3d at 1186.

### c.    Conspiracy Claim

Defendants next argue that Claim 9 fails to state a viable conspiracy claim and is subject to dismissal. (Doc. # 63, pp. 21-22). The Court agrees.

Claim 9 alleges that Defendants Johnston, Fanellis-Armentrout, Thistlewood, Joe White, Sheila, Gilmore, Jahn, and Susan White as well as Doe, Gilmore, Sheila, Jahn, and Gonzales, as state actors, conspired against Plaintiff to violate and revoke his parole by passing along "false information" at his parole revocation hearing and imposing allegedly unconstitutional parole conditions and policies. (Doc. # 18, p. 13). Plaintiff also alleges that Defendants "shared a common goal of depriving the Plaintiff of his constitutional right to freedom of speech, to access the courts, to associate with family," and other alleged constitutional rights. *Id*.

"To state a conspiracy claim under § 1983, a plaintiff must plead that he was deprived of a constitutional right as a result of a conspiracy comprised of or including conspirators acting under color of state law." *Leatherwood v. Rios*, 705 F. App'x 735,

28

739 (10th Cir. 2017). The "plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Id.* (internal quotation marks and citation omitted).

The Court finds that this claim fails because the allegations are too vague and conclusory to plausibly establish a conspiracy. For example, Plaintiff generally references emails and phone calls where several Defendants "passed along false information," and that Defendants "shared a common goal of depriving" Plaintiff of constitutional rights, but does not provide any specific factual allegations to support these claims. Conclusory allegations of conspiracy are insufficient to state a plausible § 1983 conspiracy claim. *Leatherwood*, 705 F. App'x at 739. Further, Plaintiff fails to plausibly allege who did what in connection with the conspiracy. *Robbins*, 519 F.3d at 1249. He merely offers impermissible collective allegations, and fails to show an affirmative link between each Defendant and the alleged conspiracy. *Stidham*, 265 F.3d at 1156. Accordingly, Claim 9 is dismissed without prejudice. *Gee*, 627 F.3d at 1186.

### d.    Equal Protection Claim as to Colo. House Bill 17-1326

Defendants next seek dismissal of Claim 14, in which Plaintiff argues that the changes in Colo. House Bill 17-1326 to Colorado's parole revocation statute, C.R.S. § 17-2-103, violate the equal protection clause. The Court agrees that dismissal of this claim is appropriate.

Plaintiff avers that, upon revocation of his parole, he received a longer sentence than other "similarly situated individuals who have non-violent status with low-medium risk." (Doc. # 18 p. 19). Plaintiff provides no facts about how he was treated differently

from any particular person or persons who were similarly situated to him, but instead rests on conclusory allegations that "similarly situated individuals" were "receiving technical violations with a maximum of 90 days in DOC." *Id.* These conclusory allegations are insufficient to state an equal protection claim. Courts routinely dismiss equal protection claims where, as here, a plaintiff makes only conclusory allegations without alleging facts that plausibly establish the similarly situated requirement. *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1173 (10th Cir. 2011) (holding inmate's conclusory allegations that "he was treated differently from others who had been 'convicted of crimes involving no sexual act, motive, or purpose'" failed to state equal protection claim where inmate did not allege facts about other similarly situated inmates); *Requena*, 893 F.3d at 1210 (holding inmates were not similarly situated where plaintiff's request to use defendant's phone to call his ill father was denied but other inmate was allowed to use the prison phone to call his pregnant wife).

Further, Plaintiff asserts that he is not challenging his parole violation "since it has already been fully served," but "wants to be similarly treated in the future to other individuals." (Doc. # 8, p. 19). Thus, the claim is not ripe for review. "A claim is not ripe if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted); *Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109, 1120 (10th Cir. 2003). The Tenth Circuit has made clear that it will not "speculate that [a parolee] will break the law or otherwise violate the conditions of their release agreement," because such "speculation would undermine the presumption of innocence

30

in our criminal justice system, and the rehabilitative focus of the parole system."

*McAlpine v. Thompson*, 187 F.3d 1213, 1218 (10th Cir. 1999). Accordingly, Claim 14 is dismissed without prejudice. *Gee v. Pachecho*, 627 F.3d at 1186.

### e.    Claim Challenging Constitutionality of C.R.S. § 18-1.3-1005

Finally, Defendants argue that Claim 15 is subject to dismissal. The Court agrees.

Claim 15 challenges the constitutionality of the SOLSA facially and as applied to Melnick. *Id*. at 24-25. SOLSA provides, in relevant part, that the parole board may require a person, as a condition of parole, to participate in the intensive supervision parole program" ("ISP") if the person is convicted of certain specified crimes. C.R.S. § 18-1.3-1005(1). The statute also requires that "sex offenders and any other persons in the [ISP] . . . receive the highest level of supervision" that is provided to parolees, and that "[t]he intensive supervision program may include, but is not limited to, severely restricted activities[.]" C.R.S. § 18-1.3-1005(2). Melnick argues that the phrase "may include, but is not limited to[,]" is vague and would allow the Parole Board to impose any conditions they want on Plaintiff, even something as extreme as chemical castration. (Doc. # 75, pp. 2, 9). This argument is rejected.

First, Melnick has failed to plausibly allege that SOLSA is facially unconstitutional. The Supreme Court has held that facial challenges are disfavored and require the plaintiff to show "that no set of circumstances exists" in which the statute at issue would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Melnick has failed to even come close to meeting this burden. The majority of the Complaint focuses

on the statute's application to Melnick, not its facial validity. (Doc. # 18, p. 20). When Melnick does fleetingly address the statute's broader application, he largely relies on conclusory allegations and speculation. (*See, e.g.* Doc. # 18, p. 20 ("This statute takes away any form of due process")). Such allegations do not satisfy the plausibility pleading standard.

Melnick's Complaint also fails to state an as-applied challenge to SOLSA. Melnick essentially alleges that his parole restrictions were enforced in an arbitrary way: some restrictions were strictly enforced, while others were largely ignored. (*See* Doc. # 18, p. 20). But Melnick fails to explain how the alleged arbitrary enforcement relates to SOLSA. The statute makes clear that it is intended to "minimize the risk to the public to the greatest extent possible," and its provisions appear tailored to meet that goal. C.R.S. § 18-1.3-1005(2). Melnick has not plausibly shown that the statute "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Additionally, "'the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Melnick,* 487 F. Supp. 3d at 1058 (citing *Williams*, 553 S. Ct. at 303).

Based on the foregoing, the Parole Motion (Doc. # 63) is granted as to Claim 15, and that claim is dismissed without prejudice. *Gee*, 627 F.3d at 1186.

## IV. Conclusion

For the reasons stated herein, the Parole Motion (Doc. # 63) and the Mathews Motion (Doc. # 122) are GRANTED IN PART AND DENIED IN PART as follows:

32

IT IS ORDERED that Plaintiff's claims are DISMISSED WITHOUT PREJUDICE to the extent they seek declaratory relief, injunctive relief, or damages from state officials sued in their individual capacities.

IT IS FURTHER ORDERED that Defendant Mathews is DISMISSED from the case.

IT IS FURTHER ORDERED that Claims 1, 5, 9, 11, 13, 14, and 15 are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Claims 6 and 7 are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Claim 4 is DISMISSED WITHOUT PREJUDICE to the extent it is asserted against Defendants Raemisch, Joe White, and Susan White.

IT IS FURTHER ORDERED that Claim 10 is DISMISSED WITOUT PREJUDICE as to Defendants Raemisch, Gonzales, Gilmore, Doe, AMH, Sheila, and Jahn.

The following claims remain:

- Claim 2 against Gilmore, Doe, Sheila, Jahn, and Johnston;

- Claim 4 against Gilmore, Doe, Sheila, Jahn, Johnston, and Gonzales;

- the remaining portion of Claim 10 that was not previously dismissed by Judge Babcock against Susan White, Johnston, and Garcia. (Doc. # 26).

The Claims against the other Defendants, including Raemish, Geist, Fanellis-Armentrout, Joe White, Thistlewood, Phelps, Mathews, Kelsch, Waters, and AMH have been DISMISSED, and those defendants are to be removed from the caption.

IT IS FURTHER ORDERED that the AMH Motion (Doc. # 125) is DENIED AS

MOOT because the Court has recommended dismissal of all claims asserted as to

AMH.


DATED: September 10, 2021          BY THE COURT:


CHRISTINE M. ARGUELLO
United States District Judge